**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROZALIYA RIPA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>RESTAURANT DEPOT, LLC,<br><br>                    Defendant. | Civil Action No.: 1:26-cv-2853<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rozaliya Ripa ("Plaintiff"), by and through her attorney, makes the following allegations against Defendant Restaurant Depot, LLC ("Defendant" or "Restaurant Depot") pursuant to the investigations of her counsel and upon information and belief, except as to the allegations specifically pertaining to herself or her counsel, which are based upon personal knowledge.

## INTRODUCTION

1. This is a class action on behalf of purchasers of "Supremo Italiano Extra Virgin Olive Oil" (the "Product" or "Supremo Italiano") in the United States.

2. Defendant markets, labels, advertises, and sells the Product to consumers with packaging that prominently and unequivocally represents that the oil is "Extra Virgin Olive Oil" (the "Representation").

3. Reasonable consumers believe, based on Defendant's Representation, that the Product is olive oil. However, independent laboratory testing has shown that the Product is adulterated with rapeseed oil.

4. Rapeseed oil, more commonly known as canola oil in the United States, is a highly processed oil and considered to be lower quality than extra virgin olive oil. More

importantly, rapeseed oil is sold at far lower prices than extra virgin olive oil, including the

Product.

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| **Supremo Italiano Extra Virgin Olive Oil[1]** | **101 fl. oz.** | **$29.99** | **$0.30 per fl. oz.** |
| Cavo D'oro Extra Virgin Olive Oil[2] | 101 fl. oz | $25.99 | $0.26 per fl. oz. |
| Chef's Quality-Canola Oil[3] | 560 fl. oz | $39.99 | $.07 per fl. oz. |
| Chef's Quality-Blended Oil with 10% olive oil[4] | 128 fl. oz | $12.99 | $.10 fl. oz. |

5. Calling a product "olive oil" when it contains any other non-olive oil is barred by

an array of olive oil-making conventions, standard industry practices, international regulations,

and federal and state laws. According to several authorities, a product containing more than a

negligible amount of other oils must contain a prominent disclosure of that fact on the label.

Defendant does not disclose its use of rapeseed oil and instead misleads purchasers as to the very

---

[1]https://www.instacart.com/products/19189945-supremo-italiano-extra-virgin-olive-oil-3-l?retailerSlug=restaurant-depot.

[2]https://www.instacart.com/products/21310690-san-remo-extra-virgin-olive-oil-3-l?retailerSlug=restaurant-depot.

[3]https://www.instacart.com/products/19189690-chef-s-quality-100-pure-canola-salad-oil-35-lb?retailerSlug=restaurant-depot.

[4] https://www.instacart.com/products/19190186-chef-s-quality-blended-oil-with-90-vegetable-oil-10-extra-virgin-olive-oil-1-gal?retailerSlug=restaurant-depot.

2

nature of its product by, among other things, disguising adulterated olive oil as "Extra Virgin Olive Oil."

6.  Defendant's misbranding is intentional. Any reasonable quality-control check would detect the presence of rapeseed oil. A packer or distributor of olive oils therefore does not unwittingly mislabel adulterated olive oil as olive oil.

7.  The mislabeling of the Product renders it worthless. By mislabeling the Product, Defendant dupes consumers into purchasing something that is *not* olive oil. Nevertheless, the Product is labeled and sold as premium olive oil, and it commands a substantial price premium over rapeseed oil.

8.  Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Products during the statute of limitations period, for violation of New York General Business Law ("GBL") §§ 349-350, breach of express warranty, and fraud.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10.  This Court has general personal jurisdiction over Defendant because its principal place of business is in New York and is thus at home in New York.

11.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in this District.

**PARTIES**

12.    Plaintiff Rozaliya Ripa is an individual consumer who, at all times material hereto, was a citizen of New York.  Ms. Ripa purchased the Product in or around September 2025 from Ali NY Convenience which is located in New York, New York. Plaintiff paid approximately $20 for the Product. Plaintiff saw and relied on Defendant's Representation in making her purchase. Plaintiff reasonably believed, based on the Representation, that she was purchasing unadulterated extra virgin olive oil, and this belief was a material part of her decision to purchase the Product. Had Plaintiff known that the Product was adulterated with rapeseed oil and was not extra virgin olive oil, she would not have purchased it, or she would have paid less for it. Thus, Plaintiff has suffered an injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

13.    An independent laboratory has conducted testing on the bottle of the Product purchased by Plaintiff and has confirmed that the purported olive oil in the bottle was adulterated with rapeseed oil.

14.    Defendant Restaurant Depot, LLC is a Delaware limited liability company with its principal place of business at 1710 Whitestone Expressway, Whitestone, New York 11357.

15.    Defendant manufactures, markets, and distributes the Product throughout New York and the United States.

**FACTUAL ALLEGATIONS**

A.    **No Law, Regulation, Or Standard Permits Adulterated Oil to be Labeled as Olive Oil**

16.    Virgin olive oil is defined as "oils which are obtained from the fruit of the olive tree (*Olea europaea L.*) solely by mechanical or other physical means under conditions,

4

particularly thermal conditions, that do not lead to alterations in the oil, and which have not undergone any treatment other than washing, decantation, centrifugation and filtration."[5]

17.     Despite vigilant policing by responsible industry members, the cost disparities between olive oil and other vegetable oils nevertheless create a financial incentive for fraudsters to adulterate olive oils with cheaper oils (such as rapeseed oil) and disguise it as olive oil.

18.     Various federal, state, and international bodies have promulgated standards to guard against deceptive mislabeling, including standards to distinguish olive oil from other seed oils. Relevant here are three regulatory bodies: the USDA, the International Olive Council, and the New York State Legislature. They have adopted standards that reflect the longstanding industry practices that underlie relevant consumer expectations.

19.     The USDA has promulgated the following definition for classifying olive-derived oils:

> Virgin olive oils are the oils obtained from the fruit of the olive tree solely by mechanical or other physical means under conditions, including thermal conditions, that do not lead to alterations in the oil, and which have not undergone any treatment other than washing, decantation, centrifugation, and filtration … No additives of any kind are permitted.

75 Fed. Reg. 22363 (Apr. 28, 2010).

20.     Similarly, under New York law, "olive oil" is defined as the oil "obtained solely from the fruit of the olive tree (olea europaea), to the exclusion of oils obtained using solvents or reesterification processes and of any mixture with oils of other kinds." N.Y. Agric. & Mkts. Law § 204-a(l)(a). "[R]efined olive oil" is the "olive oil obtained from virgin olive oils by refining methods which do not lead to alterations in the initial glyceridic structure. It has free acidity, expressed as oleic acid, of not more than 0.3 grams per hundred grams." *Id.* § 204-a(l)(c).

---

[5] International Olive Council, Trade Standard Applying to Olive Oils and Olive-Pomace Oils, COI/T.15/NCNo.3/Rev 21 at 2.1.1 (July 2025) (the "IOC Trade Standards").

21.     New York's legislature has made it "unlawful for any person to manufacture, pack, possess, sell, offer for sale, and/or expose for sale any compound or blended oil of any kind which purports to be an olive oil mixture unless the container thereof be permanently and conspicuously labeled 'compound oil' or 'blended oil' with a statement of the different ingredients thereof and the specific percentage of olive oil, the total percentage of other vegetable oils and the specific percentage of each other ingredient comprising more than one half of one per centum of the mixture." *Id.* § 204-a.

22.     "Failure to meet the[se] standards ... shall render olive oil sold in intrastate commerce in the state misbranded." *Id.* § 204-a(3)(b).

23.     The International Olive Council (the "IOC"), an intergovernmental organization of states that produce olives or products derived from olives, promulgates globally recognized standards used to determine the quality and purity of olive oils. The IOC actively monitors and seeks to prevent olive oil fraud throughout its member countries. In addition, the IOC has certified a small number of laboratories around the world that meet rigorous guidelines for performing chemical and sensory tests of olive oils. Under IOC standards, just like under USDA regulations, no one can label olive oil mixed with rapeseed oil as olive oil.[6]

### B.     Laboratory Testing Confirms the Product Is Not "Olive Oil"

24.     In January 2026, the Product purchased by Plaintiff was blinded and shipped to the Lluis Jané Busquets Labratori d'Anàlisi S.L., an IOC-recognized laboratory located in Sant Quirze del Vallès, Spain. Laboratory testing confirmed that this Product was adulterated. These results are attached as Exhibit A.

25.     Based on a number of separate objective chemical criteria, these samples of

---

[6] IOC Trade Standards 2.1.

"Extra Virgin Olive Oil" were found to be adulterated with rapeseed oil. As such, the Product

cannot properly be labeled, represented, or commonly understood to be olive oil:

| Parameter | IOC Limit for Olive Oil[7] | Plaintiff's Supremo Italiano Sample |
|---|---|---|
| Brassicasterol | <=0.1 | 0.8 |
| Campesterol | <=4.0 | 6.0 |
| Beta-sitosterol | >=93 | 91.3 |
| Stigmasta-3,5-diene | <=0.05 | .36 |

26.    Elevated levels of sterols such as Brassicasterol and Campesterol are not found in

virgin olive oil and indicate adulteration under both IOC and USDA standards.[8] Stigmasta-3,5-

diene is a sterol that is produced during the refining process, mainly during bleaching and

deodorizing steps. Such refining steps are not used in producing pure olive oil and thus the

presence of stigmasta-3,5-diene is used to detect the presence of refined oils in virgin olive oil

"since refined oils contain stigmastadienes and virgin oils do not."[9]

27.    These results cannot be blamed on merely poor-quality olive oil or the handling

and storage of the particular tin purchased by Plaintiff. These results simply could not have

occurred if these lots of ostensibly "Extra Virgin Olive Oil" contained only oils extracted from

olives. In other words, these markers do not appear by happenstance and clearly indicate that the

---

[7] *Id*.

[8] *Id* at 3.3.1; United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 Fed. Reg. 22363 (Apr. 28, 2010); *see also* Detection of olive oils authenticity by determination of their sterol content using LC/GC, Bohačenko, I; Kopicová, Z. *Czech Journal of Food Sciences*, Vol. 19, Iss. 3 p.97-103, (Feb 7, 2013): p. 97-103.

[9] International Olive Council, Determination of Stigmastadienes in Vegetable Oils, COI/T.20/Doc. No 11/Rev. 4 (June 2021).

oil is adulterated with rapeseed oil.

### C.      Defendant's False and Deceptive Labeling

28.      The Product is generally sold in various container types. On all containers, the front and back label represents that the Product contains extra virgin olive oil. A photo of the bottle that Plaintiff purchased is below:





29.   As can be seen from the above image, the Product's Representation conveys the unequivocal message that the Product is olive oil.

30.   Defendant does not disclose anywhere that the Product is adulterated with other oils. Thus, consumers reasonably believe the Product is unadulterated olive oil.

31.   As discussed above, based on Plaintiff's investigation and testing, the Product is not olive oil and is in fact adulterated with rapeseed oil. Thus, the claim is false and misleading.

9

**D.    Defendant's Representation Is Material**

32.    Defendant's Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Product.

33.    Olive oil is widely believed to be the healthiest cooking oil available and is extremely popular in the United States largely because it is minimally processed, especially virgin olive oils.

34.    Regardless of whether consumers believe olive oil to be superior to rapeseed oil, the issue of whether the olive oil is pure or is adulterated is material to reasonable consumers. For example, consumers may be allergic to, or have other reasons for not consuming, rapeseed oil. Consumers of the Product reasonably expect to know what type of oil they are consuming.

35.    Consumers purchased, and continue to purchase, the Product in part because Defendant's Representation conveys the unequivocal message that the Products only contain olive oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased it at all, if not for this Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Product commands in the market as a result of Defendant's Representation that the Product is olive oil.

## CLASS ALLEGATIONS

36.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All natural persons who purchased the Product in the United States within the applicable statute of limitations period.

**New York Subclass**

All natural persons who purchased the Product in the State of New York within the applicable statute of limitations period.

10

37. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

39. Plaintiff is a member of both classes.

40. Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Product is sold throughout the United States and the State of New York. The number of individuals who purchased the Product during the relevant time period is at least in the tens of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

41. Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      (a)    Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Product;

(b)     Whether Defendant's use of the challenged packaging, constituted false or deceptive advertising;

(c)     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

(d)     Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

(e)     Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

(f)     Whether Plaintiff and the Classes are entitled to statutory damages, and if so, in what amount; and

(g)     Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

42.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Product. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of the Product: (a) bears the same material false Representation and (b) the Product does not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

12

43.    Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

44.    Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

45.    Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

46.    Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

47.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

48.    Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

49.     Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

50.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

51.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

52.     Defendant made false and misleading statements by marketing the Product as "olive oil" when in fact it was adulterated with cheaper oils.

53.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

54.     Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Product, as discussed throughout.

55.     Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

56.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

57.     The foregoing deceptive acts and practices were directed at consumers.

58.     Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

59.     Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased

the Product had they known the truth, and (b) they overpaid for the Product on account of the misrepresentations and omissions, as described herein.

60.    On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

61.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

62.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

63.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

64.    Defendant's labeling and advertisement of the Product was false and misleading in a material way.  Specifically, Defendant advertised the Product as "olive oil" when in fact it was adulterated with rapeseed oil.

65.    Plaintiff understood Defendant's misrepresentations to mean that the Product was in fact "olive oil" as reasonable consumers understand the term.

66.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

67.    This misrepresentation has resulted in consumer injury or harm to the public interest.

15

68.    As a result of this misrepresentation, Plaintiffs and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Product on account of the misrepresentations and omissions, as described herein.

69.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or $500, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III

**Breach of Express Warranty**
**(For all Classes)**

70.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

71.    Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

72.    In connection with the sale of the Product, Defendant issued written warranties. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that the Product was olive oil.

73.    Defendant's express warranties and its affirmations of fact and promises made to Plaintiff and the Class regarding the Product became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

74.    The Product does not conform to the express warranties because it is adulterated with rapeseed oil and thus cannot be labeled as olive oil.

75.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Product if they had known the truth about the Product's adulteration ; (b) they paid a price premium for the Product based on Defendant's express warranties; and (c) the Product did not have the characteristics, uses, or benefits as promised.

76.    As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as sold.

77.    On February 13, 2026, Plaintiff sent a notice letter to Defendant consistent with NY UCC § 2-607(3)(a) and U.C.C. 2-607(3)(A).  The letter was sent on behalf of Plaintiff and all other persons similarly situated.

## COUNT IV
### Fraud
### (For all Classes)

78.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

79.    Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant

80.    Defendant affirmatively misrepresented to consumers that the Product was olive oil despite the fact the Product was adulterated with rapeseed and is not olive oil.

81.    Defendant's misrepresentations are material to a reasonable consumer because it relates to the quality, safety, utility, and healthfulness of the Product. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to oil that is consumed.

82.    At all relevant times, Defendant knew that the representations were misleading.

Defendant intended for Plaintiff and other consumers to rely on the representations, as evidenced by Defendant intentionally and conspicuously placing the Representation on the packaging of the Product. In the alternative, Defendant acted recklessly in making the Representation without regard to the truth.

83.     Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Product, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market, or would not have purchased them at all.

84.     Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the price premium for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and New York Subclass as follows:

a.    For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For injunctive relief enjoining the illegals acts detailed herein;

f.      For prejudgment interest on all amounts awarded;

g.      For an order of restitution and all other forms of equitable monetary relief;

h.      For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated: April 7, 2026                    **BURSOR & FISHER, P.A.**


By:_____/s/ Yitzchak Kopel_____
                   Yitzchak Kopel

               Yitzchak Kopel
               Julian C. Diamond
               1330 Avenue of the Americas, 32nd Floor
               New York, NY 10019
               Tel:  (646) 837-7150
               Fax: (212) 989-9163
               Email: ykopel@bursor.com
                       jdiamond@bursor.com

               **EATON & TORRENZANO, L.L.P.**
               Craig A. Eaton
               8416 3rd Ave
               Brooklyn, New York 11209
               Telephone (718) 332-7766
               Facsimile  (718) 332-5898
               Email: ce1617@aol.com

               *Attorneys for Plaintiff*

19

**EXHIBIT A**

**lluís jané busquets
laboratori d'anàlisi s.l.**



The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

V.A.T. Id. B61817615
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

**Lluís Jané Busquets Laboratori d'Analisi S.L.**
c/ St Llorenç, 27 baixos 08192 Sant Quirze del Valles (Bcn)

BURSOR & FISHER, P.A.

1330 Avenue of the Americas, 32nd Floor
New York

## ANALYSIS CERTIFICATE

**Report Nº: 86082**

### Sample Idenfication

| | | | |
|---|---|---|---|
| Reception date: | 20/02/2026 | Initial date Analysis: | 20/02/2026 |
| Final date analysis: | 27/02/2026 | Issue report date: | 27/02/2026 |
| Sample Nº: | 86082 | | |
| Sample description: | Oil contained in 250ml plastic bottle | | |

**Information provided by the client:**

| | |
|---|---|
| Sample: | EXTRA VIRGIN OLIVE OIL |
| Reference: | F503 |

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|
| **Fatty Acid Composition + Trans Isomers (Quantitative %)** | | | | |
| **Myristic Acid** | 0,01 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,03 |
| **Palmitic Acid** | 11,95 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 7,00-20,00 |
| **Palmitoleic Acid** | 1,27 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 0,30-3,50 |
| **Heptadecanoic Acid** | 0,08 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,40 |
| **Heptadecenoic Acid** | 0,13 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,60 |
| **Stearic Acid** | 3,43 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 0,50-5,00 |
| **Oleic Acid** | 73,93 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 55,00-85,00 |
| **Linoleic Acid** | 7,33 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 2,50-21,00 |
| **Arachidic Acid** | 0,44 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,60 |
| **Linolenic Acid** | 0,96 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=1,00 |
| **Eicosenoic Acid** | 0,28 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,50 |
| **Behenic Acid** | 0,12 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,20 |
| **Lignoceric Acid** | 0,06 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,20 |
| **Oleic Trans Isomers** | 0,02 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,05 |
| **Linoleic and Linolenic Trans isomers** | 0,04 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,05 |

Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.

Registro Mercantil de Barcelona Tomo 31582 - Folio 73 Hoja B194757 - Inscripción 1ª C.I.F. B-61817615



**lluis jané busquets**
**laboratori d'anàlisi s.l.**



The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

V.A.T. Id. B61817615
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

**Report Nº: 86082**

# ANALYSIS CERTIFICATE

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|
| *Sterol Composition+Total Sterol+ E+U* | | | | |
| **Cholesterol** | 0,1 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,5 |
| **Brassicasterol** | 0,8±0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,1 |
| **24-Methylenecholesterol** | 0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Campesterol** | 6,0±0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=4,0 |
| **Campestanol** | 0,1 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Stigmasterol** | 0,7 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <Campesterol |
| **Delta7-Campesterol** | <0,1 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Beta-sitosterol (apparent)** | 91,3±0,5 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | >=93,0 |
| **Delta-7-Stigmastenol** | 0,4 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,5 |
| **Delta-7-Avenasterol** | 0,4 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Total Sterol** | 1.813 mg/kg | COI T.20 DOC nº26 Rev. 5 | GC-FID | >=1.000 |
| **Erythrodiol+Uvaol** | 2,9 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=4,5 |

| | | | | |
|---|---|---|---|---|
| **Difference:ECN42(HPLC)and ECN42(theoretical)** | 0,04 % | COI T.20 DOC nº20 Rev. 4 | GC-FID & HPLC-RI | <=I0,20I |
| **Stigmasta-3,5-diene** | 0,36±0,09 mg/kg | COI T.20 DOC nº11 Rev. 4 | GC-FID | <=0,05 |
| **Wax Content (C42+C44+C46)** | 64 mg/kg | COI T.20 DOC. nº28 Rev. 4 | GC-FID | <=150 |
| **2-Glyceryl monopalmitate** | 0,7 % | COI T.20 DOC nº23 Rev. 1 | GC-FID | <=0,9 |

**LEGISLATION**

International Olive Council Trade Standard for Olive Oils and Olive Pomace Oils COI/T.15/NC No. 3 Rev. 21

Technical Manager,
Anna Jané.

Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.



lluis jane busquets
laboratori d'anàlisi s.l.



The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

V.A.T. Id. B61817615
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

**Report Nº: 86082**

# ANALYSIS CERTIFICATE

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|

| *Annex* | | | | |
| | | | | |



Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.